United States District Court
Southern District of Texas
**ENTERED**
September 26, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROKIT DRINKS LLC, *et al*, | § § | CIVIL ACTION NO 4:22-cv-01551 |
| Plaintiffs, | § § § | |
| vs. | § § § § | JUDGE CHARLES ESKRIDGE |
| LANDRY'S INC, *et al*, Defendants. | § § | |

OPINION AND ORDER
GRANTING MOTION TO DISMISS

The motion to dismiss brought by Defendants Landry's Inc and Fertitta Entertainment Inc is granted. Dkt 38.

1. Background

Plaintiff ROKiT Drinks LLC is in the beverage business, supplying everything from spirits and beer to premium energy drinks. Dkt 36 at ¶¶ 8–9. Plaintiff ROK Imports Inc is a California corporation and a wholly owned subsidiary of ROKiT Beverage Group Limited, which is a wholly owned subsidiary of Plaintiff ROK Stars Limited. Id at ¶ 2. The second amended complaint specifically states that it lumps all three of these together as both *ROKiT Drinks* and *Plaintiffs*. Id at 1. This hampers precise specification between them here.

Defendant Landry's LLC is in the dining and hospitality business. Id at ¶ 10. It was until June 2018 known as Landry's Inc. Dkt 38 at 5 n 1. The president, chairman, and CEO of Landry's LLC is Tilman Fertitta, who also owns Defendant Fertitta Entertainment Inc. Fertitta Entertainment is a holding company that includes the Houston Rockets and several Landry's-related companies as subsidiaries. Dkt 36 at ¶¶ 10–12. The second

amended complaint specifically states that it lumps Landry's LLC and Fertitta Entertainment together as *Defendants*, again hampering precise specification. Id at 1.

This suit arises from an allegedly unfulfilled promise made by Landry's to ROKiT Drinks to showcase its beverages at the many Landry's locations nationwide. As alleged, the dispute traces its origins to an agreement between ROKiT Marketing (an entity separate from ROKiT Drinks) and the Houston Rockets.

In August 2018, the Rockets were in search of a jersey sponsor and contacted ROKiT Marketing about a potential partnership. The original proposal contemplated a five-year partnership that would include sponsorship and related marketing benefits, in addition to "a business portfolio wide relationship with the franchise, their home venue (the Toyota Center), and Landry's Inc." Dkt 36 at ¶ 15. The agreement would also entail serving ROKiT Drinks' products not only at all Rockets games and other events at the Toyota Center, but also "at all 600 Landry's owned and operated locations around the world." Ibid.

The parties continued with negotiations beyond August 2018. According to Plaintiffs, these early communications indicate that the parties contemplated two separate agreements. Id at ¶ 16. Various proposals and emails from representatives for Defendants and the Rockets show that, through the early stages of negotiation, the parties contemplated both a *sponsorship agreement* with the Rockets and a separate *beverage agreement* with Landry's. The alleged purpose of the latter was to "showcase" specific ROKiT Drinks' products at Landry's locations. See generally id at ¶¶ 17–22.

ROKiT Marketing and the Rockets formally entered the sponsorship agreement in October 2018, with ROKiT Marketing receiving various advertising and promotional benefits in exchange for a substantial payment. Id at ¶ 23. Plaintiffs stress that this agreement was entirely separate from the beverage agreement at issue. The sponsorship agreement was not simply between distinct entities. It included an express term stating, "This Agreement is for

2

advertising and promotional benefits only and is in no way conditioned on or subject to the sale of Sponsor's alcohol products by [the Rockets]." Id at ¶ 24. An earlier pleading asserted that the parties included this term to comply with then-existing NBA rules. Dkt 21 at ¶ 27.

The complaint attempts to demonstrate that Plaintiffs then entered into the separate beverage agreement with Defendants, and that Landry's thereafter failed to perform satisfactorily. Again, as alleged, the basic agreement was that Landry's would showcase particular ROKiT Drinks' beverages—including its new line of Bogart Spirits—at hundreds of Landry's locations nationwide. In return, says the complaint, "Plaintiffs would ensure that ROKiT Drinks' Products be available for distribution to each of Defendants' locations and that the respective distributors be provided with sufficient quantities of Plaintiffs' products to fulfill Landry's orders." Dkt 36 at ¶ 27.

Because of alcohol regulations throughout the United States, distribution agreements were essential to carrying out this alleged agreement. In many territories containing Landry's locations, ROKiT Drinks didn't have preexisting relationships with distributors. Where this was so, ROKiT Drinks was required to enter into new distribution agreements. And Landry's requested in these instances that Plaintiffs enter into agreements with its preferred distributors. Plaintiffs complied, entering into agreements with such preferred distributors as Favorite Brands and Republic National Distributing Company. Id at ¶¶ 28–32.

It's clear from the allegations that Plaintiffs and Defendants never entered into a formal beverage agreement putting the above into practice. Certainly, no such final writing is alleged. Still, Plaintiffs maintain that such an agreement existed and that it contained express terms. In seeking to prove as much, Plaintiffs first point to the above-mentioned emails and partnership proposals exchanged during negotiation. Id at ¶ 26. They also point to their agreements with distributors, saying that these imposed obligations on Plaintiffs for the benefit of Landry's—even though Landry's wasn't a party to those

3

agreements—and that such agreements likewise set the price that Landry's would be required to pay for each ROKiT Drinks product. Id at ¶¶ 33–36.

Even so, the complaint specifically avers that "the quantity of ROKiT Drinks that Defendants are required to purchase under the Beverage Agreement is not a term that is supplied by the distribution agreements," and that "Defendants are not necessarily required to purchase any quantity of ROKiT Drinks Products under the Beverage Agreement." Id at ¶ 36. Instead, the putative agreement "simply requires that Defendant 'showcase' ROKiT Drinks' Products at all of Defendants' locations." Ibid.

Plaintiffs allege that the beverage agreement wasn't implemented to their satisfaction. The complaint says that the parties worked towards implementing the agreement for a time, and orders from "Landry's restaurants began trickling in." Id at ¶ 41–43. But sales were disappointing and fell well below expectations. Id at ¶ 44. Landry's thereafter occasionally took promising steps towards showcasing beverages, but overall sales remained low, with few Landry's locations offering ROKiT Drinks' beverages. Id at ¶¶ 46–47.

ROKiT Drinks expressed its disappointment to Defendants, primarily by email. One email in January 2019 from Jonathan Kendrick, the co-founder of ROKiT Drinks, reads in part, "I know we could not put this in the contract but it was clearly agreed that you wold help us get our drinks into your outlets and that was the main reason I got the sponsorship through the Rockets." Id at ¶ 47 (typos in original). But the complaint alleges that by January 2020, "ROKiT Drinks had only made approximately $440,000 in sales to a small portion of the Landry's locations, in violation of the Beverage Deal and the expectations set by Landry's/Fertitta Entertainment." Id at ¶ 52. It further alleges that, in early 2021, Landry's ordered its restaurants to stop carrying ROKiT Drinks beverages altogether. Id at ¶ 53.

This alleged breach of the beverage agreement had several negative effects on ROKiT Drinks' business.

4

Plaintiffs allege that, after it became clear that Landry's wouldn't honor the beverage agreement, ROKiT Drinks was forced to fire twenty-six full-time employees and destroy excess product produced for purposes of that agreement. Id at ¶¶ 54–55. The failure of the beverage agreement also resulted in Plaintiffs losing a separate multi-million-dollar agreement with Bogart LLC, a company with whom Plaintiffs had contracted to develop the Bogart Spirits product line, which were among those that Landry's allegedly agreed to showcase. Id at ¶ 57.

Plaintiffs initiated this action in May 2022. Dkt 1. They filed a first amended complaint in July 2022. Dkt 21. It was dismissed at initial conference in September 2022. Dismissed with prejudice were claims for negligent misrepresentation and claims under the Deceptive Trade Practices Act. Dismissed without prejudice were claims for (i) breach of contract, (ii) promissory estoppel, (iii) fraud by misrepresentation, (iv) fraud by nondisclosure, and (v) tortious interference with contract. They were specifically admonished that "(i) any contract claim must specify the material terms of the contract and the nature of the applicable consideration, and (ii) all amended claims, whether brought in contract or in tort, must be viable with respect to the dictates of Section 102.16(a)(1) of the Texas Alcoholic Beverage Code." See Dkt 30.

Plaintiffs filed their second amended complaint in October 2022, repleading those claims dismissed without prejudice. Dkt 36. Pending is Landry's motion to dismiss this action for failure to state a claim. Dkt 38.

  2. Legal standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a plaintiff's complaint to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) allows the defendant to seek dismissal if the plaintiff fails "to state a claim upon which relief can be granted."

Read together, the Supreme Court has held that Rule 8 "does not require 'detailed factual allegations,' but it

demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v Iqbal*, 556 US 662, 678 (2009), quoting *Bell Atlantic Corp v Twombly*, 550 US 544, 555 (2007). To survive a Rule 12(b)(6) motion to dismiss, the complaint "must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v Taylor*, 503 F3d 397, 401 (5th Cir 2007), quoting *Twombly*, 550 US at 555.

A complaint must therefore contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 US at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 US at 678, citing *Twombly*, 550 US at 556. This standard on plausibility is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id at 678, quoting *Twombly*, 550 US at 556.

Review on motion to dismiss under Rule 12(b)(6) is constrained. The reviewing court "must accept all well-pleaded facts as true, and . . . view them in the light most favorable to the plaintiff." *Walker v Beaumont Independent School District*, 938 F3d 724, 735 (5th Cir 2019), quoting *Campbell v Wells Fargo Bank,* 781 F2d 440, 442 (5th Cir 1986). But "courts 'do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.'" *Vouchides v Houston Community College System*, 2011 WL 4592057, *5 (SD Tex), quoting *Gentiello v Rege*, 627 F3d 540, 544 (5th Cir 2010). The court must also generally limit itself to the contents of the pleadings and attachments thereto. *Brand Coupon Network LLC v Catalina Marketing Corp*, 748 F3d 631, 635 (5th Cir 2014).

    3. Analysis

All claims asserted by Plaintiffs proceed on essentially the same facts. As to breach of contract, no enforceable

6

contract is alleged. Each of the other claims is likewise insufficient in its own way under applicable law.

### a. Breach of contract

Landry's asserts that the breach of contract claim fails due to (i) failure to allege essential terms, (ii) the statute of frauds, (iii) absence of consideration, and (iv) illegality. The first two reasons are readily apparent and dispositive. The latter two needn't be addressed.

*First,* Plaintiffs fail to allege the essential terms of the beverage agreement. The Texas Supreme Court is clear that, to be binding under Texas law, "a contract must be sufficiently definite in its terms so that a court can understand what the promisor undertook. The material terms of the contract must be agreed upon before a court can enforce the contract." *TO Stanley Boot Co Inc v Bank of El Paso,* 847 SW2d 218, 221 (Tex 1992) (citations omitted). Terms are *material* that deal "with a significant issue such as subject matter, price, payment, quantity, quality, duration, or the work to be done." *Bill Wyly Development Inc v Smith,* 2017 WL 3483225, *4 (Tex App—Houston [1st Dist], no pet) (citations omitted).

The complaint no doubt indicates that the parties contemplated, and were perhaps negotiating towards, a beverage agreement. But it fails to allege definite terms to which Landry's and Plaintiffs ultimately agreed, which renders any agreement in this respect enforceable. Of note, both *quantity* and *price* terms are missing. All that's alleged is that Landry's would "showcase" ROKiT Drinks' beverages at Landry's locations for a period of five years. For example, see Dkt 36 at ¶¶ 19, 25, 27, 36–41, 46. This isn't a sufficiently definite term to establish either quantity or price. And, contrary to what ROKiT Drinks argues, the agreements with distributors can't fill in the gaps. See Dkt 49 at 10–11. Nothing is presented to establish that Landry's was a party to ROKiT Drinks' agreements with such distributors or that it consented to them as enforceable against itself.

*Second,* the statute of frauds bars any breach-of-contract claim concerning the beverage agreement. Dismissal on statute-of-frauds grounds is appropriate where the allegations "reveal beyond doubt that the plaintiff can prove no set of facts" that would overcome a statute-of-frauds defense or otherwise entitle the plaintiff to relief. *Garrett v Commonwealth Mortgage Corp*, 938 F2d 591, 594 (5th Cir 1991). In attempt to avoid dismissal, Plaintiff allege and argue that the beverage agreement contained a five-year term. Dkt 49 at 8, citing Dkt 36 at ¶ 39. Section 26.01(b)(6) of the Texas Business and Commerce Code addresses such contracts, intended of their nature "not to be performed within one year from the date of making the agreement." In such circumstances, Section 26.01(a) requires that any such contract be "in writing" and "signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him."

A signed writing is precisely what's lacking here. Indeed, an email from the co-founder of ROKiT Drinks quoted in the complaint and set out above flatly concedes that the beverage agreement *was not* and *could not be* included as part of the sponsorship agreement (which *was* put in writing). See Dkt 36 at ¶ 47. No other allegation specifies all necessary contractual terms of the supposed beverage agreement in a writing signed by Landry's. It's thus quite curious for Plaintiffs to argue that they "are entitled to discovery" on the statute of frauds inquiry. Dkt 49 at 14. Discovery isn't what's needed; rather, Plaintiffs needed simply to specify the signed writing that evidenced their alleged contract with Landry's.

The breach-of-contract claim will be dismissed for failure to allege specific terms and unenforceability due to the statute of frauds.

### b. Remaining claims

Plaintiffs' other claims for fraud by misrepresentation, fraud by nondisclosure, tortious interference, and promissory estoppel are all based on the alleged failure of Landry's to follow through on its purported promise to

8

showcase or offer ROKiT Drinks' beverages—including those in the Bogart Spirits line—at its many locations nationwide. Each is thus based on the same facts as the breach-of-contract claim.

Texas law holds, "Application of the statute of frauds to a contract vitiates a fraud claim based on the same facts." *Collins v Allied Pharmacy Management Inc*, 871 SW2d 929, 936 (Tex App—Houston [14th Dist] 1994, no writ); accord *Wilson v Dallas Cowboys Football Club Inc*, 50 F3d 1033, 1995 WL 136496, \*2 (5th Cir, *per curiam*). This is because the statute of frauds bars proof of the underlying, oral promise that would serve to support the fraud claim. *Collins*, 871 SW2d at 936. As such, the claims for fraud by misrepresentation and by nondisclosure must be dismissed.

The same is true of a tortious-interference claim to the extent it relies on proof of the underlying oral promise. The claim simply can't proceed if proof of the promise is itself barred by the statute of frauds. See *Weakly v East*, 900 SW2d 755, 759 (Tex App—Corpus Christi–Edinburg 1995, writ denied).

It's also true of promissory-estoppel claims where, as here, the promise that the defendant failed to perform is the purported contractual promise rather than "the promise 'to sign a written agreement which itself complies with the Statute of Frauds.'" See *Wilson*, 1995 WL 136496 at \*3, quoting *"Moore" Burger Inc v Phillips Petroleum Co*, 492 SW3d 934, 940 (Tex 1972).

The follow-on claims asserted by Plaintiffs for fraud by misrepresentation, fraud by nondisclosure, tortious interference, and promissory estoppel will be dismissed.

4. Conclusion

The motion by Defendants Landry's LLC and Fertitta Entertainment Inc to dismiss is GRANTED. Dkt 38.

The claims by Plaintiffs ROKiT Drinks LLC, *et al*, are DISMISSED WITH PREJUDICE.

A final judgment will issue by separate order.

SO ORDERED.

Signed on September 26, 2023, at Houston, Texas.

_____
Hon. Charles Eskridge
United States District Judge